**BAKER & HOSTETLER LLP**
Heather J. McDonald (HM 3320)
Robertson D. Beckerlegge (RB 1829)
Kevin M. Wallace (KW 1284)
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Counsel for Plaintiff
Michael Kors, L.L.C.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL KORS, L.L.C., <br><br> Plaintiff, <br><br> -against- <br><br> 314 FIFTH AVENUE, INC.; 5TH AVE GATEWAY LAND, LLC; JOHN DOE and/or JANE DOE 1 – 3, <br><br> Defendants. | CIVIL ACTION NO. <br><br> 16 CV _____ |

## COMPLAINT

Plaintiff Michael Kors, L.L.C. ("MK" or "Plaintiff") by and through its undersigned counsel, for

its Complaint against 314 Fifth Avenue, Inc. ("314 Fifth Avenue"), 5th Ave Gateway Land, LLC

("5th Ave Gateway Land"), and John Doe and/or Jane Doe 1 through 3 (individually "John Doe

1" through "John Doe 3"), (collectively, the "Defendants") alleges as follows:

### STATEMENT OF THE CASE

1.      Plaintiff seeks monetary and injunctive relief against Defendants for numerous

causes of action, including but not limited to, (i) direct and contributory trademark

counterfeiting, in violation of 15 U.S.C. § 1114; (ii) direct and contributory trademark

infringement, in violation of 15 U.S.C. § 1114; (iii) direct and contributory false

descriptions/false designations of origin, in violation of 15 U.S.C. § 1125; and (iv) knowingly permitting leased real property to be used for an unlawful trade or business, in violation of N.Y. Real Prop. L. § 231(2).

2.      Certain areas of New York City have long been major distribution hubs for counterfeit goods that are sold throughout the United States.   Wholesale and retail sales of counterfeit goods occur frequently and regularly from locations around the city.  Plaintiff in this case, and trademark holders in general, has been plagued by the sale and distribution of counterfeit goods at locations all over New York City for years.  To combat this illegal activity and protect its world-famous and valuable name, reputation and trademarks, Plaintiff has, at great expense, commenced and led enforcement efforts in and around New York City.  MK regularly works with law enforcement in operations against the individuals and entities selling counterfeit goods bearing its trademarks.  Arrests for trademark counterfeiting have been made routinely by the New York City Police Department and by other agencies.  The Mayor's Office of Special Enforcement for the City of New York has conducted numerous enforcement operations against both the sellers of counterfeit goods and the property owners that lease them the space, enabling the ongoing sale of counterfeit merchandise.

3.      John Doe 1 is an individual or entity operating from a room Plaintiff has designated as "Room 1", which is located on the right side of the hallway leading to the back of the fourth floor at 314 Fifth Avenue.  When exiting either the elevator or the stairwell on the fourth floor of 314 Fifth Avenue, one turns left and walks down the hallway towards the back of the floor.  On the right side of the hallway are two adjacent doors.  As one faces the two doors, the door on the right with the doorknob located on the right side of the door is Room 1.  John Doe 1 is engaged in the illegal sale of counterfeit MK goods from this Room 1.

4.     John Doe 2 is an individual or entity operating from a room Plaintiff has designated as "Room 2", which is located on the right side of the hallway leading to the back of the fourth floor at 314 Fifth Avenue.  When exiting either the elevator or the stairwell on the fourth floor of 314 Fifth Avenue, one turns left and walks down the hallway towards the back of the floor.  On the right side of the hallway are two adjacent doors.  As one faces the two doors, the door on the left with the doorknob located on the left side of the door is Room 2.  John Doe 2 is engaged in the illegal sale of counterfeit MK goods from this Room 2.

5.     John Doe 3 is an individual or entity operating from a room Plaintiff has designated as "Room 3", which is located on the fourth floor at 314 Fifth Avenue.  When exiting either the elevator or the stairwell on the fourth floor of 314 Fifth Avenue, one turns right, as Room 3 is at the front of the location facing Fifth Avenue.  Room 3 has a white grated door with a doorknob located on the left side of the door.  John Doe 3 is engaged in the illegal sale of counterfeit MK goods from this Room 3.

6.     John Doe 1, John Doe 2, and John Doe 3 (collectively, the "Tenant Defendants") in this action have sold, offered for sale and distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks (defined *infra*.) for at least two years.  Defendant 5th Ave Gateway Land, the owner of the real property from which these sales have taken place, continues to allow its premises to be used as a safe haven and marketplace from which counterfeiters can sell their wares.  5th Ave Gateway Land has apparently sanctioned a number of counterfeiters despite notice from Plaintiff.  5th Ave Gateway Land's empowering of these counterfeiters cannot be condoned and 5th Ave Gateway Land must be held accountable for its complicity in these illegal activities.  Defendant 314 Fifth Avenue, the former owner of the real property from which these sales have taken place, allowed the ongoing sale of counterfeit goods to take place

from at least August 1, 2014 through May 12, 2016, despite multiple notices from Plaintiff. 314 Fifth Avenue must be held accountable for its complicity in these illegal activities.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over the subject matter of this civil action pursuant to 15 U.S.C. § 1051, et seq., § 1114(1), § 1121 and 28 U.S.C. §§ 1331 and 1338.

8.     This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.     This Court may exercise personal jurisdiction over Defendants pursuant to § 301 of the New York Civil Practice Law and Rules ("CPLR"), because Defendants are domiciled within the State of New York.

10.     Alternatively, this Court may exercise personal jurisdiction over Defendants pursuant to CPLR § 302(a)(1), (2) and (4), because the acts about which Plaintiff complains arise from Defendants' transaction of business within New York State and/or agreement to supply goods in New York State; Defendants' commission of a tortious act within New York State; and/or Defendants' ownership, use or possession of real property situated within New York State.

11.     Venue is proper in this judicial district under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims alleged by Plaintiff occurred within the City, State and County of New York.

## THE PARTIES

12.     Plaintiff Michael Kors, L.L.C. is a Delaware Limited Liability Company with its principal place of business located at 11 West 42nd Street, New York, New York 10036.

13.     Defendant 5th Ave Gateway Land, LLC is a Delaware Corporation.  Defendant 5th Ave Gateway Land, LLC's principal place of business is located at 299 Park Avenue, 6th Floor, New York, New York 10171.  Upon information and belief, Defendant 5th Ave Gateway Land, LLC has been the owner of the real property located at 314 Fifth Avenue, New York, New York 10001 from May 12, 2016 through the date of the filing of this Complaint.

14.     Defendant 314 Fifth Avenue, Inc. is a New York Corporation.  Defendant 314 Fifth Avenue's principal place of business is located at 243 West End Avenue, #1701, New York, New York 10023.  Upon information and belief, Defendant 314 Fifth Avenue, Inc. was the owner of the real property located at 314 Fifth Avenue, New York, New York 10001 from at least August 1, 2014 through May 12, 2016.

15.     John Doe 1 operates a business from Room 1 on the fourth floor of 314 Fifth Avenue, New York, New York 10001, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks at this location.

16.     John Doe 2 operates a business from Room 2 on the fourth floor of 314 Fifth Avenue, New York, New York 10001, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks at this location.

17.     John Doe 3 operates a business from Room 3 on the fourth floor of 314 Fifth Avenue, New York, New York 10001, and has been doing business in the City and State of New

York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks at this location.

18.     The identity of the Tenant Defendants is not presently known, and the Complaint will be amended, if appropriate, to include the name or names of said individuals when such information becomes available.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.     PLAINTIFF AND ITS BUSINESS

19.     MK is a global luxury lifestyle brand led by renowned, award-winning designer Mr. Michael Kors.

20.     Since launching his namesake brand over 30 years ago, Michael Kors has featured distinctive designs, materials and craftsmanship with a jet-set aesthetic that combines stylish elegance and a sporty attitude.  Mr. Kors's vision has taken the company from its beginnings as an American luxury sportswear house to a global accessories, footwear and apparel company with a presence in approximately 100 countries.

21.     MK is the owner of the trade name "Michael Kors", which Plaintiff has used to identify itself and its products in the United States for over 30 years.

22.     MK is the owner of the entire right, title and interest in and to, *inter alia*, the valid, subsisting trademarks and uncanceled trademark registrations on the Principal Register of the United States Patent and Trademark Office which include, but are not limited to, the following:

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
|  | December 18, 2007 | 3356080 | Handbags and small leather goods, namely, wristlet bags. |
| MICHAEL KORS | June 4, 1996 | 1977507 | Ladies' clothing; namely, dresses, jackets, pants, skirts, shirts, blouses, shorts, sweaters, coats, swimwear. |
| MICHAEL KORS | April 1, 1997 | 2049326 | Clothing for use by women; namely, anoraks; aprons; ascots; babushkas; bandanas; bathrobes; belts; blazers; blousons; bodysuits; boleros; boots; boxer shorts; brassieres; briefs; caftans; camisoles; capes; caps; cardigans; chemises; clogs; fur coats; suit coats; corselets; culottes; earmuffs; galoshes; garter belts; girdles; gloves; nightgowns; halter tops; hats; headbands; hosiery; jeans; jogging suits; jumpers; jumpsuits; kerchiefs; kimonos; leggings; leotards; loungewear; mittens; moccasins; mufflers; neckerchiefs; neckties; neckwear; negligees; nightshirts; overalls; overshoes pajamas; panties; pantsuits; pantyhose; parkas; pedal pushers; peignors; pinafores; playsuits; pocket squares; ponchos; pullovers; raincoats; sandals; scarves; shawls; shorts; undershirts; athletic shoes; gym shorts; sweat shorts; ski suits; slacks; snowsuits; socks; sport coats; sport shirts; stockings; stoles; suits; suspenders; sweat pants; sweat shirts; t-shirts; trousers; tuxedos; underpants; vests; vested suits; and warm-up suits; and, clothing for use by men; namely, anoraks; ascots; bandanas; bathrobes; belts; blazers; boots; boxer shorts; briefs; capes; caps; cardigans; clogs; fur coats; suit coats; earmuffs; galoshes; gloves; hats; headbands; hosiery; jeans; jogging suits; kerchiefs; leotards; loungewear; mittens; moccasins; mufflers; neckerchiefs; neckties; neckwear; nightshirts; overalls; overshoes; pajamas; pantsuits; parkas; pedal pushers; playsuits; pocket squares; ponchos; pullovers; raincoats; sandals; scarves; shawls; shorts; undershirts; athletic shoes; gym shorts; sweat shorts; ski suits; slacks; snowsuits; socks; sport coats; sport shirts; suits; suspenders; sweat pants; sweat shirts; t-shirts; trousers; tuxedos; vests; vested suits; and warm-up suits. |
| MICHAEL KORS | December 18, 2001 | 2520757 | Handbags, billfolds, credit card cases, key cases, and tote bags. |
| MICHAEL KORS | December 18, 2001 | 2520758 | Eyeglasses, eyeglass cases. |
| MICHAEL KORS | March 12, 2002 | 2547039 | Retail store services in the fields of clothing, jewelry and clothing accessories. |
| MICHAEL KORS | April 22, 2003 | 2708259 | Cosmetics; namely, body lotion, cologne, perfume, and shower gel. |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| MICHAEL KORS | October 17, 2006 | 3160981 | Watches. |
| MICHAEL KORS | November 8, 2011 | 4052748 | Jewelry. |
| MICHAEL KORS | May 14, 2013 | 4334410 | Protective cases, covers and carrying cases for mobile phones, portable media players, personal digital assistants, laptops and tablet computers. |
| MICHAEL KORS ISLAND | September 19, 2006 | 3146355 | Fragrance products, namely eau de parfum. |
| MICHAEL MICHAEL KORS | April 11, 2006 | 3080631 | Eyeglass frames, eyeglasses, sunglasses, eyeglass cases, carrying cases, namely, attaché cases; bags, namely, tote bags; luggage; suitcases; handbags; purses; wallets; men's and women's clothing, namely, dresses, skirts, blouses, pants, jackets, blazers, coats, raincoats, capes, ponchos, scarves, hats, gloves, sweaters, belts, hosiery, bathing suits, halter tops, socks, jeans, warm up suits, sweatshirts, sweatpants, leggings, shorts, slacks, sport coats, sport shirts, suits, t-shirts, tuxedos, vests, ties; undergarments for men and women, namely, boxer shorts, bras, bustiers, camisoles, nightgowns, nightshirts, pajamas, panties, undershirts, underwear; footwear and headwear; belts. |
| MICHAEL MICHAEL KORS | November 8, 2011 | 4052752 | Jewelry and watches. |
| MICHAEL MICHAEL KORS | May 14, 2013 | 4334409 | Protective cases, covers and carrying cases for mobile phones, portable media players, personal digital assistants, laptops and tablet computers. |
| MK MICHAEL KORS | May 27, 2008 | 3438412 | Eyeglass frames, eyeglasses, sunglasses, eyeglass cases, eye shades, protective eye wear and eye wear for sports; handbags; men's and women's clothing, namely, dresses, skirts, blouses, pants, jackets, blazers, coats, raincoats, capes, ponchos, scarves, hats, gloves, sweaters, belts, hosiery, bathing suits, halter tops, socks, jeans, warm up suits, sweatshirts, sweatpants, leggings, shorts, slacks, sport coats, sport shirts, suits, T-shirts, tuxedos, vests, ties; undergarments for men and women, namely, boxer shorts, bras, bustiers, camisoles, nightgowns, nightshirts, pajamas, panties, undershirts, underwear, footwear and headwear; belts. |
| MK MICHAEL KORS | November 18, 2008 | 3535310 | Watches. |

(hereinafter collectively referred to as "Plaintiff's Federally Registered Trademarks"). Copies of the MK trademark registrations, as listed on the U.S. Patent and Trademark Office website, are attached as Ex. A.

23.     MK is also the owner of any common law trademarks associated with its products.

24.     Plaintiff's Federally Registered Trademarks are in full force and effect and have been used for years on and in connection with MK's merchandise.

25.     Plaintiff's Federally Registered Trademarks and the goodwill of the business of MK in connection with which the trademarks are used have never been abandoned and are in full force and effect.  MK intends to preserve and maintain its rights with respect to its Federally Registered Trademarks.

## II.     DEFENDANTS AND THEIR BUSINESSES

### A.     *The Tenant Defendants*

26.     Upon information and belief, the Tenant Defendants have infringed, continue to infringe, and threaten to further infringe Plaintiff's Federally Registered Trademarks by manufacturing, distributing and selling counterfeit merchandise.  The counterfeit products which are being manufactured, distributed and sold by the Tenant Defendants bear copies of Plaintiff's Federally Registered Trademarks.  The display of such counterfeit and infringing products by the Tenant Defendants is an unauthorized public display of products bearing Plaintiff's Federally Registered Trademarks.   The marketing of such counterfeit and infringing products by the Tenant Defendants is an unauthorized distribution of copies of products bearing Plaintiff's Federally Registered Trademarks.

27.     Long after Plaintiff's use and registration of Plaintiff's Federally Registered Trademarks, the Tenant Defendants, on information and belief, commenced the manufacture, distribution, and sale of merchandise bearing counterfeits and infringements of Plaintiff's Federally Registered Trademarks as those trademarks appear on Plaintiff's products and as shown in the U.S. Trademark Registrations attached to this Complaint as Ex. A.

28.     Upon information and belief, the activities of the Tenant Defendants complained of herein constitute willful and intentional infringement of Plaintiff's Federally Registered Trademarks, are in total disregard of Plaintiff's rights, and were commenced and have continued in spite of the Tenant Defendants' knowledge that the use of any of Plaintiff's Federally Registered Trademarks, or copies or colorable imitations thereof, was and is in direct contravention of Plaintiff's rights.  The use by the Tenant Defendants of copies of Plaintiff's Federally Registered Trademarks has been without Plaintiff's consent, is likely to cause confusion and mistake in the minds of the purchasing public and, in particular, tends to and does falsely create the impression that the goods sold by the Tenant Defendants are authorized, sponsored, or approved by Plaintiff when, in fact, they are not.

**B.     *Defendant 5th Ave Gateway Land, LLC***

29.     5th Ave Gateway Land, LLC is the owner of the real property located at 314 Fifth Avenue, New York, New York 10001 (the "Property"), which is situated between 31st Street and 32nd Street on the west side of Fifth Avenue in the borough of Manhattan.

30.     Upon information and belief, 5th Ave Gateway Land has owned the Property continuously from May 12, 2016 through the date of the filing of this Complaint.

31.     Since at least November 2016, 5th Ave Gateway Land has had actual, specific knowledge that tenants or subtenants at the Property have been using the Property as a base of operations from which to sell counterfeit trademarked goods.

32.     5th Ave Gateway Land has turned a blind eye to the activities of the Tenant Defendants on the Property, creating a safe haven and marketplace from which counterfeit goods bearing Plaintiff's Federally Registered Trademarks are routinely sold.

C.    *Defendant 314 Fifth Avenue, Inc.*

33.    314 Fifth Avenue, Inc. is the former owner of the Property.

34.    Upon information and belief, 314 Fifth Avenue owned the Property continuously from at least August 1, 2014 through May 12, 2016.

35.    From at least August 2014 through May 12, 2016, 314 Fifth Avenue had actual, specific knowledge that tenants or subtenants at the Property were using the Property as a base of operations from which to sell counterfeit trademarked goods.

36.    314 Fifth Avenue turned a blind eye to the activities of the Tenant Defendants on the Property, creating a safe haven and marketplace from which counterfeit goods bearing Plaintiff's Federally Registered Trademarks were routinely sold.

D.    *Defendants' Activities at the Property*

37.    On or about August 1, 2014, Plaintiff conducted a civil seizure of counterfeit merchandise from Room 2 on the fourth floor of the Property, seizing a significant quantity of counterfeit merchandise, including but not limited to, 288 MK handbags, 35 MK tags, nine (9) pieces of MK jewelry, and five (5) MK watches.

38.    On August 20, 2014, Plaintiff's counsel sent a letter to 314 Fifth Avenue, notifying it of the civil seizure of counterfeit MK merchandise from the Property on August 1, 2014.

39.    After receiving no response to their August 20, 2014 letter, Plaintiff's counsel sent a follow-up letter on September 25, 2014, reminding 314 Fifth Avenue of their August 20, 2014 notification letter.

40.    On or about November 5, 2015, Plaintiff conducted a civil seizure of counterfeit merchandise from Room 2 on the fourth floor of the Property, seizing a significant quantity of

counterfeit merchandise, including, but not limited to, 508 MK tags, 161 MK pocketbooks, 62 MK wallets, 18 MK belts, seven (7) MK watches, and four (4) MK bracelets.

41.     On December 8, 2015, Plaintiff's counsel sent a letter to 314 Fifth Avenue, requesting a response to Plaintiff's August 20, 2014 and September 25, 2014 letters, and notifying 314 Fifth Avenue of the civil seizure of MK counterfeit merchandise from the Property on November 5, 2015.

42.     On or about June 21, 2016, Plaintiff conducted a civil seizure of counterfeit merchandise from both Room 1 and Room 2 on the fourth floor of the Property.  Plaintiff seized a significant quantity of counterfeit merchandise from Room 1, including, but not limited to, 1,466 MK tags, 215 MK wallets, 80 MK handbags, 41 MK pocketbooks, 35 MK cases, 11 pairs of MK sunglasses, seven (7) MK watches, and three (3) MK backpacks.  Plaintiff seized a significant quantity of counterfeit merchandise from Room 2, including, but not limited to, 130 MK pocketbooks, 92 MK wallets, 34 MK tags, and six (6) MK watches.

43.     On or about July 30, 2016, Plaintiff conducted a civil seizure of counterfeit merchandise from both Room 1 and Room 2 on the fourth floor of the Property.  Plaintiff seized a significant quantity of counterfeit merchandise from Room 1, including, but not limited to, 76 MK handbags, 74 MK tags, 35 MK wallets, 29 pairs of MK sandals, 23 MK cases, 14 pairs of MK sunglasses, and four (4) MK watches.  Plaintiff seized a significant quantity of counterfeit merchandise from Room 2, including, but not limited to, 75 MK handbags, 30 MK wallets, 30 MK tags, seven (7) MK cases, five (5) MK watches, five (5) pairs of MK sunglasses, and two (2) pairs of MK sandals.

44. On November 2, 2016, Plaintiff's counsel sent a letter to 5th Ave Gateway Land, notifying it of the civil seizures of counterfeit MK merchandise from the Property on August 1, 2014, November 5, 2015, June 21, 2016, and July 30, 2016.

45. On or about December 9, 2016 Plaintiff conducted a civil seizure of counterfeit merchandise from Room 1, Room 2, and Room 3 on the fourth floor of the Property. Plaintiff seized a significant quantity of counterfeit merchandise from Room 1, including, but not limited to, 116 MK handbags, 71 MK tags, 52 MK watches, 15 MK wallets, and two (2) pairs of MK slippers. Plaintiff seized a significant quantity of counterfeit merchandise from Room 2, including, but not limited to, 31 MK watches, ten (10) MK wallets, and five (5) MK tags. Plaintiff seized a significant quantity of counterfeit merchandise from Room 3, including, but not limited to, six (6) MK watches, one (1) MK handbag, and one (1) MK shirt.

### FIRST CAUSE OF ACTION

### TRADEMARK COUNTERFEITING AGAINST THE TENANT DEFENDANTS
### 15 U.S.C. § 1114

46. Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

47. The Tenant Defendants have knowingly advertised, promoted, distributed, sold and offered for sale goods bearing counterfeit versions of Plaintiff's Federally Registered Trademarks from the Property.

48. The Tenant Defendants' use of counterfeit versions of Plaintiff's Federally Registered Trademarks in connection with the advertisement, promotion, distribution, sale and offer for sale of goods that do not originate from Plaintiff is likely to cause confusion, mistake and deception among consumers that the counterfeit goods originate from, are sponsored by, or associated with, Plaintiff.

49.     The Tenant Defendants' misconduct constitutes the intentional and willful use of counterfeit versions of Plaintiff's Federally Registered Trademarks in connection with the sale, offering for sale, or distribution of goods, in violation of 15 U.S.C. § 1114(1).

50.     The Tenant Defendants' acts constitute trademark counterfeiting in violation of 15 U.S.C. § 1114.

51.     Upon information and belief, in committing these wrongs, the Tenant Defendants intentionally and willfully intended to trade on the goodwill associated with Plaintiff's Federally Registered Trademarks.

52.     Upon information and belief, in committing these wrongs, the Tenant Defendants acted willfully within the meaning of 15 U.S.C. § 1117(c)(2).

53.     Upon information and belief, the Tenant Defendants have made and will continue to make substantial profits to which they are not entitled in law or equity.

54.     Upon information and belief, the Tenant Defendants intend to continue their infringing acts, unless restrained by this Court.

55.     The Tenant Defendants' acts damaged and will continue to damage Plaintiff, and Plaintiff has no adequate remedy at law.

56.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting the Tenant Defendants from using Plaintiff's Federally Registered Trademarks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from the Tenant Defendants all damages, including attorneys' fees, which Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by the Tenant Defendants as a result thereof, in an amount not yet known, as well as the costs of this action

pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## SECOND CAUSE OF ACTION

### TRADEMARK INFRINGEMENT AGAINST THE TENANT DEFENDANTS
### 15 U.S.C. § 1114

57.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

58.     Plaintiff's Federally Registered Trademarks are nationally recognized, including within the Southern District of New York, as being affixed to goods and merchandise of the highest quality.

59.     The registrations embodying Plaintiff's Federally Registered Trademarks are in full force and effect and Plaintiff has authorized responsible manufacturers to produce, and vendors to sell, merchandise with these trademarks.

60.     The Tenant Defendants' unauthorized use of Plaintiff's Federally Registered Trademarks in commerce and advertising constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiff or come from the same source as Plaintiff's goods and are of the same quality as that assured by Plaintiff's Federally Registered Trademarks.

61.     The Tenant Defendants' infringing use of Plaintiff's Federally Registered Trademarks is without Plaintiff's permission or authority and is in total disregard of Plaintiff's rights to control their trademarks.

62.     The Tenant Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiff has produced,

sponsored, authorized, licensed or is otherwise connected to or affiliated with the Tenant Defendants.

63.     Upon information and belief, the Tenant Defendants' acts are deliberate and intended to confuse the public as to the source of the Tenant Defendants' goods or services and to injure Plaintiff and reap the benefit of Plaintiff's goodwill.

64.     As a direct and proximate result of the Tenant Defendants' willful and unlawful conduct, Plaintiff has been injured and will continue to suffer injury to its business and reputation unless the Tenant Defendants are restrained by this Court from infringing Plaintiff's Federally Registered Trademarks.

65.     Plaintiff has no adequate remedy at law.

66.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting the Tenant Defendants from using Plaintiff's Federally Registered Trademarks or any marks identical and/or confusingly similar thereto, for any purpose, and to recover from the Tenant Defendants all damages, including attorneys' fees, which Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by the Tenant Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

### THIRD CAUSE OF ACTION

### FEDERAL TRADEMARK DILUTION AGAINST THE TENANT DEFENDANTS
### 15 U.S.C. § 1125(c)

67.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

68.    Plaintiff is the exclusive owner of its Federally Registered Trademarks as set forth above.

69.    The Tenant Defendants' use of Plaintiff's Federally Registered Trademarks on the counterfeit goods they sell constitutes the Tenant Defendants' commercial use in commerce of Plaintiff's Federally Registered Trademarks.

70.    These marks have been used for years and are so globally recognized and associated with Plaintiff that they are entitled to be recognized as famous and distinctive under 15 U.S.C. § 1125(c).

71.    Plaintiff's Federally Registered Trademarks have come to have a secondary meaning indicative of origin, relationship, sponsorship and/or association with Plaintiff and its distinctive reputation for high quality.  The purchasing public is likely to attribute to Plaintiff the Tenant Defendants' use of Plaintiff's Federally Registered Trademarks as a source of origin, authorization and/or sponsorship for the products the Tenant Defendants sell, and further, purchase the Tenant Defendants' products in the erroneous belief that the Tenant Defendants are associated with, sponsored by or affiliated with Plaintiff, when they are not.

72.    Plaintiff has not authorized or licensed the use of Plaintiff's Federally Registered Trademarks to the Tenant Defendants.

73.    The Tenant Defendants' unauthorized use of Plaintiff's Federally Registered Trademarks in their marketing, sale and distribution of counterfeit products are diluting the distinctive quality of Plaintiff's Federally Registered Trademarks and the goodwill associated therewith in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c).

74.    Such conduct has injured Plaintiff and that injury will continue unless the Court enjoins the Tenant Defendants from committing further wrongful acts.

75.     Upon information and belief, the Tenant Defendants intentionally and willfully utilized Plaintiff's Federally Registered Trademarks and traded on Plaintiff's reputation and goodwill.

76.     Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts by the Tenant Defendants in an amount thus far not determined.

**FOURTH CAUSE OF ACTION**

**FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING AGAINST
THE TENANT DEFENDANTS
15 U.S.C. § 1125(a)**

77.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

78.     The Tenant Defendants have, in connection with their goods, used in commerce, and continue to use in commerce, Plaintiff's Federally Registered Trademarks.

79.     The Tenant Defendants have affixed, applied and used in connection with their sale of goods false designations of origin and false and misleading descriptions and representations, including Plaintiff's Federally Registered Trademarks, which tend falsely to describe the origin, sponsorship, association or approval by Plaintiff of the goods sold by the Tenant Defendants.

80.     The Tenant Defendants have used one or more of Plaintiff's Federally Registered Trademarks with full knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Plaintiff.

81.     The Tenant Defendants' use of Plaintiff's Federally Registered Trademarks on the counterfeit goods constitutes false descriptions and representations tending to falsely describe or

represent the Tenant Defendants and their products as being authorized, sponsored, affiliated or associated with Plaintiff.

82.     The Tenant Defendants have used one or more of Plaintiff's Federally Registered Trademarks on counterfeit goods with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the high quality reputation of Plaintiff and to improperly appropriate for themselves the valuable trademark rights of Plaintiff.

83.     The Tenant Defendants' aforesaid acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent the Tenant Defendants' products as those of Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84.     The Tenant Defendants' wrongful acts will continue unless enjoined by this Court.

85.     Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts in an amount thus far not determined.

## FIFTH CAUSE OF ACTION

### INJURY TO BUSINESS REPUTATION AGAINST THE TENANT DEFENDANTS
### NY GBL § 360-1

86.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

87.     Due to Plaintiff's extensive sales and significant marketing and promotional activities, Plaintiff's Federally Registered Trademarks have achieved widespread acceptance and recognition among the consuming public throughout the United States.

88.     Plaintiff's Federally Registered Trademarks are arbitrary and distinctive and identify Plaintiff as the source and origin of the goods on which Plaintiff's Federally Registered Trademarks appear.

89.     The Tenant Defendants have caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputation, in violation of New York General Business Law § 360-1.

90.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting the Tenant Defendants from using Plaintiff's Federally Registered Trademarks, and to recover all damages, including attorneys' fees, which Plaintiff has sustained and will sustain, and all gains, profits and advantages obtained by the Tenant Defendants as a result of their infringing acts alleged above in an amount not yet known as well as the costs of this action.

## SIXTH CAUSE OF ACTION

### COMMON LAW TRADEMARK INFRINGEMENT AGAINST THE TENANT DEFENDANTS

91.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

92.     Plaintiff owns all right, title, and interest in and to Plaintiff's Federally Registered Trademarks, including all common law rights in those marks.

93.     The Tenant Defendants, without Plaintiff's authorization, have used and are continuing to use spurious designations that are identical to, substantially indistinguishable from, or confusingly similar to Plaintiff's Federally Registered Trademarks.

94.     The Tenant Defendants' foregoing acts are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public,

and the trade as to whether the Tenant Defendants' goods originate from, are affiliated with, sponsored by, or endorsed by Plaintiff.

95. The Tenant Defendants' acts constitute trademark infringement in violation of the common law of the State of New York.

96. Plaintiff has been irreparably harmed and will continue to be irreparably harmed as a result of the Tenant Defendants' unlawful acts unless they are permanently enjoined from their unlawful conduct.

97. Plaintiff has no adequate remedy at law.

### SEVENTH CAUSE OF ACTION

### CONTRIBUTORY TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION AND FALSE DESIGNATIONS OF ORIGIN AGAINST DEFENDANT 5TH AVE GATEWAY LAND, LLC

98. Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

99. The Tenant Defendants have committed direct acts of trademark counterfeiting, trademark infringement, use of false designations of origin, and trademark dilution. Counterfeit MK merchandise has been displayed and offered for sale and sold by the Tenant Defendants on the Property.

100. Since at least November 2016, 5th Ave Gateway Land has had actual, specific knowledge that the Tenant Defendants and others were using the Property as a base of operation from which to sell counterfeit trademarked goods – including goods of inferior quality – that bear counterfeit versions of Plaintiff's Federally Registered Trademarks.

101. Despite such actual and specific knowledge, 5th Ave Gateway Land has knowingly continued to permit and condone the Tenant Defendants' use of the Property as a base

of operation from which to sell goods bearing counterfeit versions of Plaintiff's Federally Registered Trademarks.

102.   5th Ave Gateway Land has turned a blind eye to the activities of the Tenant Defendants on the Property, creating a safe haven and marketplace from which counterfeit goods bearing Plaintiff's Federally Registered Trademarks are routinely sold.

103.   5th Ave Gateway Land receives direct financial benefit through the lease of the Property.

104.   Since purchasing the Property on May 12, 2016, 5th Ave Gateway Land has had the ability to prevent others from using the Property as a base from which to sell goods bearing counterfeit versions of Plaintiff's Federally Registered Trademarks, yet 5th Ave Gateway Land has neglected to do so.

105.   Despite having this ability, 5th Ave Gateway Land has failed to take reasonably adequate measures to ensure that the Property is not used by sellers of counterfeit goods.

106.   5th Ave Gateway Land has provided the Tenant Defendants with the means and instrumentality necessary to sell counterfeit goods from the Property and has benefited from the sale of counterfeits.

107.   Acting with the foregoing actual and constructive knowledge, 5th Ave Gateway Land has enabled, facilitated, perpetuated, and materially contributed to the Tenant Defendants' unlawful acts.

108.   5th Ave Gateway Land is contributorily liable to Plaintiff for its participation in the unlawful acts of the Tenant Defendants that have taken place at the Property from the date it purchased the Property on May 12, 2016 through the date of the filing of this Complaint.

109. The counterfeiting of Plaintiff's Federally Registered Trademarks is to the great and irreparable damage of Plaintiff and Plaintiff believes, as indicated, that 5th Ave Gateway Land will continue to benefit from counterfeiting activities unless enjoined by this Court.

110. 5th Ave Gateway Land's activities are likely to lead to and result in confusion, mistake or deception and are likely to cause the public to believe that Plaintiff has produced, sponsored, authorized, licensed or are otherwise connected or affiliated with 5th Ave Gateway Land's commercial and business activities, all to the detriment of Plaintiff.

111. As a result of 5th Ave Gateway Land's willful and unlawful conduct, Plaintiff has been injured and will continue to suffer injury to its business and reputation unless 5th Ave Gateway Land is restrained by this Court.

112. 5th Ave Gateway Land's acts have damaged and will continue to damage Plaintiff, and Plaintiff has no adequate remedy at law.

113. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting 5th Ave Gateway Land from enabling the sale of counterfeit merchandise bearing Plaintiff's Federally Registered Trademarks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from 5th Ave Gateway Land all damages, including attorneys' fees, which Plaintiff has sustained and will sustain as a result of the unlawful acts of the Tenant Defendants that have taken place at the Property from the date it purchased the Property on May 12, 2016 through the date of the filing of this Complaint.

114. As a result of such infringing acts, Plaintiff is entitled to all gains, profits and advantages obtained by 5th Ave Gateway Land as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble

damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## EIGHTH CAUSE OF ACTION

### CONTRIBUTORY TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION AND FALSE DESIGNATIONS OF ORIGIN AGAINST DEFENDANT 314 FIFTH AVENUE, INC.

115.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

116.    The Tenant Defendants have committed direct acts of trademark counterfeiting, trademark infringement, use of false designations of origin, and trademark dilution.  Counterfeit MK merchandise was displayed and offered for sale and sold by the Tenant Defendants on the Property from at least August 1, 2014 through May 12, 2016.

117.    From at least August 2014 through May 12, 2016, 314 Fifth Avenue had actual, specific knowledge that the Tenant Defendants and others were using the Property as a base of operation from which to sell counterfeit trademarked goods – including goods of inferior quality – that bear counterfeit versions of Plaintiff's Federally Registered Trademarks.

118.    Despite such actual and specific knowledge, from at least August 2014 through May 12, 2016, 314 Fifth Avenue knowingly continued to permit and condone the Tenant Defendants' use of the Property as a base of operation from which to sell goods bearing counterfeit versions of Plaintiff's Federally Registered Trademarks.

119.    From at least August 2014 through May 12, 2016, 314 Fifth Avenue turned a blind eye to the activities of the Tenant Defendants on the Property, creating a safe haven and marketplace from which counterfeit goods bearing Plaintiff's Federally Registered Trademarks were routinely sold.

120. 314 Fifth Avenue received direct financial benefit through its lease of the Property.

121. During the time period that 314 Fifth Avenue owned the Property, it had the ability to prevent others from using the Property as a base from which to sell goods bearing counterfeit versions of Plaintiff's Federally Registered Trademarks, yet 314 Fifth Avenue neglected to do so.

122. Despite having this ability, from at least August 2014 through May 12, 2016, 314 Fifth Avenue repeatedly failed to take reasonably adequate measures to ensure that the Property was not used by sellers of counterfeit goods.

123. From at least August 2014 through May 12, 2016, 314 Fifth Avenue provided the Tenant Defendants with the means and instrumentality necessary to sell counterfeit goods from the Property and during this time period, benefited from the sale of counterfeits.

124. Acting with the foregoing actual and constructive knowledge, from at least August 2014 through May 12, 2016, 314 Fifth Avenue enabled, facilitated, perpetuated, and materially contributed to the Tenant Defendants' unlawful acts.

125. 314 Fifth Avenue is contributorily liable to Plaintiff for its participation in the unlawful acts of the Tenant Defendants that took place at the Property from August 1, 2014 through May 12, 2016.

126. As a result of 314 Fifth Avenue's willful and unlawful conduct, Plaintiff has been injured.

127. 314 Fifth Avenue's acts have damaged Plaintiff, and Plaintiff has no adequate remedy at law.

128.   In light of the foregoing, Plaintiff is entitled to recover from 314 Fifth Avenue all damages, including attorneys' fees, which Plaintiff has sustained and will sustain, as a result of the unlawful acts of the Tenant Defendants that took place at the Property from August 1, 2014 through May 12, 2016.

129.   As a result of such infringing acts, Plaintiff is entitled to all gains, profits and advantages obtained by 314 Fifth Avenue as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## NINTH CAUSE OF ACTION

### PRIVATE RIGHT OF ACTION AGAINST DEFENDANT 5TH AVE GATEWAY LAND, LLC N.Y. REAL PROP. L. § 231

130.   Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

131.   The manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks is an unlawful trade or business under New York law.

132.   5th Ave Gateway Land has knowingly leased or given possession of the Property to be used or occupied, in whole or in part, for the manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks.

133.   5th Ave Gateway Land has knowingly permitted the Property to be used, in whole or in part, for the manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks.

134.    By reason of the foregoing, pursuant to N.Y. Real Prop. L. § 231(2), 5th Ave Gateway Land is jointly and severally liable to Plaintiff for all damages resulting from the unlawful trademark counterfeiting activities of the Tenant Defendants that have taken place at the Property from the date of its purchase of the Property on May 12, 2016 through the date of the filing of this Complaint.

## TENTH CAUSE OF ACTION

### PRIVATE RIGHT OF ACTION AGAINST
### DEFENDANT 314 FIFTH AVENUE, INC.
### N.Y. REAL PROP. L. § 231

135.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

136.    The manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks is an unlawful trade or business under New York law.

137.    From at least August 2014 through May 12, 2016, 314 Fifth Avenue knowingly leased or gave possession of the Property to be used or occupied, in whole or in part, for the manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks.

138.    From at least August 2014 through May 12, 2016, 314 Fifth Avenue knowingly permitted the Property to be used, in whole or in part, for the manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks.

139.    By reason of the foregoing, pursuant to N.Y. Real Prop. L. § 231(2), 314 Fifth Avenue is jointly and severally liable to Plaintiff for all damages resulting from the unlawful trademark counterfeiting activities of the Tenant Defendants that took place at the Property from August 1, 2014 through May 12, 2016.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court enter judgment against Defendants as follows:

*Against the Tenant Defendants:*

A. Granting temporary, preliminary and permanent injunctive relief restraining the Tenant Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from:

(1) Using Plaintiff's Federally Registered Trademarks or any marks confusingly similar thereto, in connection with the manufacturing, distribution, advertising, offering for sale, and/or sale of merchandise;

(2) Committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of the Tenant Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with, Plaintiff;

(3) Otherwise infringing upon Plaintiff's Federally Registered Trademarks;

(4) Otherwise diluting Plaintiff's Federally Registered Trademarks;

(5) Unfairly competing with Plaintiff; and

(6) Leasing or subleasing space to any tenant who is engaged in the manufacturing, purchasing, production, distribution, circulation, sale, offering for sale, importation, exportation, advertisement, promotion, display, shipping, or marketing of products that bear Plaintiff's Federally Registered Trademarks, or any other marks confusingly similar to substantially similar thereto;

B. Awarding Plaintiff all of the Tenant Defendants' profits and all damages sustained by Plaintiff as a result of the Tenant Defendants' wrongful acts, and such other

compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

      C.      Awarding treble damages in the amount of the Tenant Defendants' profits or Plaintiff's damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

      D.      Awarding applicable interest, costs, disbursements and attorneys' fees, pursuant to 15 U.S.C. § 1117(b); and

      E.      Awarding Plaintiff statutory damages pursuant to 15 U.S.C. §1117(c).

***Against Defendant 5th Ave Gateway Land, LLC:***

      A.      Granting temporary, preliminary and permanent injunctive relief restraining 5th Ave Gateway Land, its agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from leasing or subleasing space to any tenant who is engaged in the manufacturing, purchasing, production, distribution, circulation, sale, offering for sale, importation, exportation, advertisement, promotion, display, shipping, or marketing of products that bear Plaintiff's Federally Registered Trademarks, or any other marks confusingly similar to or substantially similar thereto; and

      B.      Finding 5th Ave Gateway Land contributorily liable for the Tenant Defendants' counterfeiting of Plaintiff's Federally Registered Trademarks and for any damages resulting from the Tenant Defendants' activities complained of herein from May 12, 2016 through the date of the filing of this Complaint, including, but not limited to, actual damages, statutory damages, treble damages, interest, costs, disbursements and attorneys' fees.

***Against Defendant 314 Fifth Avenue, Inc.:***

A.      Finding 314 Fifth Avenue contributorily liable for the Tenant Defendants' counterfeiting of Plaintiff's Federally Registered Trademarks and for any damages resulting from the Tenant Defendants' activities complained of herein from August 1, 2014 through May 12, 2016, including, but not limited to, actual damages, statutory damages, treble damages, interest, costs, disbursements and attorneys' fees.

***Against all Defendants:***

A.      Awarding actual damages suffered by Plaintiff as a result of Defendants' acts;

B.      Ordering an accounting by Defendants of all gains, profits and advantages derived from their wrongful acts;

C.      Ordering Defendants to disgorge their profits;

D.      Awarding Plaintiff punitive damages in connection with their claims under New York law; and

E.      That the Court award Plaintiff such other and further relief as it deems proper.

Dated: January 3, 2017
       New York, New York

**BAKER & HOSTETLER LLP**

By: _____

Heather J. McDonald (HM 3320)
Robertson D. Beckerlegge (RB 1829)
Kevin M. Wallace (KW 1284)
45 Rockefeller Plaza
New York, New York  10111
(212) 589-4200
(212) 589-4201 - Fax
Counsel for Plaintiff
Michael Kors, L.L.C.

30